UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANIA MOURTADA

Plaintiff,

Case No. 10-11563
Honorable Julian Abele Cook, Jr.

v.

BAC HOME LOANS SERVICING, LP F/K/A COUNTRYWIDE HOME LOANS SERVICING LP, A TEXAS LIMITED PARTNERSHIP,

Defendant.

ORDER

On April 19, 2010, the Plaintiff, Rania Mourtada, filed a complaint with this Court, in which she seeks to quiet the title regarding the ownership of property at 7141 Becky in Canton, Michigan In conjunction with its complaint, Mourtada also asks the Court to issue injunctive relief against the Defendant, BAC Home Loans Servicing L.P.,( formerly known as Countrywide Home Loans Servicing L.P.), ("BAC"), that would, *inter alia*, (1) cause the cancellation of a sheriff's deed issued on May 6, 2009, and (2) restrain BAC from interfering with her rights in the property during the pendency of this litigation.

BAC has now moved to (1) dismiss the complaint under Fed. R. Civ. P. 12(b)(6), (2) obtain a judgment on the pleadings under Fed. R. Civ. P. 12(c), and/or (3) acquire the entry of a summary judgement pursuant to Fed. R. Civ. P. 56(c). For the reasons that have been stated below, the Court will grant BAC's dispositive motion.

I.

Mourtada obtained a $245,000 mortgage on the Canton, Michigan property in favor of Mortgage Electronic Registration Systems ("MERS") on May 5, 2005. Mourtada granted MERS

a security interest in this property in exchange for the loan. When Mourtada defaulted on the mortgage in March of 2009, MERS initiated foreclosure proceedings by advertisement. According to BAC, a notice of foreclosure was published in the Detroit Legal News for four consecutive weeks on March 20, 2009, March 27, 2009, April 3, 2009 and April 10, 2009. It also claims that a notice of foreclosure was posted in a conspicuous place on the property on March 21, 2009. Approximately six weeks later (May 6, 2009), the property was sold to MERS as the highest bidder at a Wayne County Sheriff's sale which was conducted by Special Deputy Sheriff Ralph Leggat.[1] During the latter part of the following month (June 28, 2009), MERS transferred its interest in the property to BAC. Upon the expiration of the statutory six month period of redemption, BAC initiated eviction proceedings in a state court (35th District Court).

The primary point of contention between the parties here was first raised when Mourtada filed a motion to dismiss BAC's eviction proceeding, contending that Leggat was not authorized to conduct the May 6, 2009 Sheriff's sale. Initially, the state court issued an order in which it, after concurring with Mourtada's position on the issue, declared the foreclosure proceeding to have been defective, and, in so doing, rejected BAC's effort to acquire possession of the property. However, after considering a motion for reconsideration by BAC, the court vacated its earlier order, believing that it contained a palpable error which nullified the efficacy of the challenged directive. The court reemphasized its earlier ruling after (1) finding that "the deputy executing the sale was not properly authorized," and (2) characterizing Leggat's conduct as an "improper action" which caused a

---

[1]The parties' disagreement continues with the spelling of the name of this law enforcement officer who conducted the Sheriff' sale. Mourtada refers to him as Ralph "Leggat" while BAC identifies him as Ralph "Leggett." Inasmuch as the spelling, as suggested by Mourtada, appears on the Sheriff's Deed, as well as the papers wherein he was appointed him as a special deputy, the Court will refer to this officer as Ralph Leggat.

"defect" in the sheriff's sale. That notwithstanding, the court - in somewhat unclear terms - observed that "a defect in the foreclosure process does not necessarily lead to an invalid foreclosure where it is evident that no harm has been suffered" and ultimately noted that its earlier ruling "did not find the formal process of the foreclosure was improperly completed as a result of [the ] defect."

BAC argues that the ruling by the state court, after granting the motion for reconsideration and setting aside its earlier ruling, is without any legal effect. BAC buttresses its argument with an observation that Mourtada's (1) subsequent motion for reconsideration, and (2) request for a stay during the pendency of this federal court litigation were denied. Rather, it points out that the state court supported BAC's request for possession of the subject property. Later, after the court reversed its order of possession for procedural reasons, the parties eventually stipulated to the entry of a stay of their dispute pending a ruling from this Court on Mourtada's action to quiet title.

Mourtada contends that the issues that were advanced by BAC's motion to dismiss have been decided by the state court judge and should be given preclusive effect here. She posits that this ruling has become "the law of the case," and cannot be relitigated which, in turn, entitles her to relief here.

II.

A motion for a judgment on the pleadings under Rule 12(c) should be analyzed by utilizing the same standard as a motion to dismiss under Rule 12(b)(6). *See, e.g., Sensations, Inc. v. City of Grand Rapids*, 526 F.3d. 291, 295-96 (6th Cir.2008). This Rule allows a court to assess whether a plaintiff has stated a claim upon which relief may be granted. Therefore, this Court must construe the complaint in favor of the plaintiff, accept her allegations within the complaint as being true, and seek to determine if her factual allegations present plausible claims. *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544 (2007).

Because BAC has referenced matters that are outside the pleadings in support of its motion, the Court will treat its request as one for a summary judgment under Rule 56(c). *See generally*, Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

In 1986, the Supreme Court opined that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Under Federal Rule of Civil Procedure 56©), a motion for a summary judgment should be granted if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is on the movants to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, a court should examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991). It is the responsibility of a court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a summary judgment must be entered only if (1) the evidence clearly suggests that the contested matter is "so one-sided that [the proponent]

must prevail as a matter of law," *id.* at 252, or (2) the opponent fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Importantly, the presentation of only a mere scintilla of supporting evidence is grossly insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

A.

BAC argues that it is entitled to a judgment in connection with Mourtada's quest to quiet title because her claim is based upon a flawed interpretation of Mich. Comp. Laws § 51.73, which provides as follows:

> Under Sheriffs and Deputy Sheriffs; Appointments and Revocations, Form, Filing and Recordation; Oaths
>
> Every appointment of an under sheriff, or of a deputy sheriff, and every revocation thereof, shall be in writing under the hand of the sheriff, and shall be filed and recorded in the office of the clerk of the county; and every such under sheriff or deputy shall, before he enters upon the duties of his office, take the oath prescribed by the twelfth article of the constitution of this state. But this section shall not extend to any person who may be deputed by any sheriff to do a particular act only.

It is clear from a plain reading of this statute that the appointment of an undersheriff or a deputy sheriff must be made in writing by the sheriff. Moreover, as the language within § 51.73 expressly provides, these requirements do not extend to those persons who are deputized to perform a specific act. *See e.g., English v. Flagstar Bank,* No. 09-11705, 2009 WL 4730450 (E.D. Mich. Dec. 9, 2009) (holding that a fair reading of § 51.70 and § 51.73 requires a finding that while a special deputy must be appointed in writing, "that appointment need not be by the sheriff.").

BAC argues that, according to *National Union of Police Officer's Local 502-M AFL-CIO v. Board of Commissioners of Wayne County,* 93 Mich. App. 76 (1979), the Michigan legislature

may not infringe upon the sheriff's constitutional discretionary authority in his enforcement of state law. In *National Union*, a deputy sheriff, who was convicted of pointing a firearm at another person, was later found by a sheriff's board to have violated the departmental rules. The sheriff's board recommended, among other things, that the deputy sheriff be temporarily transferred to a division where he should be stripped of his law enforcement powers. An arbitrator subsequently approved this aspect of the board's recommendation and ordered that the deputy be returned to his original division within a specified period of time thereafter. Yet, the sheriff refused to comply with this portion of the arbitrator's decision, resisting the directive to restore the deputy's powers as a peace officer. The Michigan Court of Appeals upheld the sheriff's decision, opining that "the power to delegate the law enforcement powers entrusted to him by our constitution is vested exclusively in the sheriff, and may not be bargained away or interfered with by any agency or individual." *Id.* at 90. Furthermore, it reasoned that, although the sheriff's power to hire, fire and discipline may be limited by the state legislature, "the matter of which of his deputies shall be delegated the powers of law enforcement entrusted to him by the constitution is a matter exclusively within his discretion and inherent in the nature of his office, and may neither be infringed upon by the Legislature nor delegated to a third party . . . ." *Id.* at 89 (internal citations omitted).

Based on the *National Union* ruling, BAC argues that the sheriff had the constitutional and statutory authority to appoint other deputies who, in turn, had the power to deputize Leggat as a special deputy sheriff who would be empowered to perform particularized acts (i.e., conducting sheriff's sales) that the sheriff was authorized to do himself. BAC says that there is no requirement under Mich. Comp. Laws § 51.73 that a special deputy appointment be in writing by the sheriff

under the circumstances of this case.[2] Therefore, BAC posits that under *National Union* and *Michigan Labor Mediation Board v. Marr*, a sheriff, acting in his capacity as the chief law enforcement officer of Wayne County, should not be hampered in the manner as to how he administers the office and assigns duties to a sheriff's deputy. 25 Mich. App. 159 (1970) (rejecting attempt by statutorily created Labor Mediation Board to order sheriff to assign his deputies to specific duty – such as road patrol – even after it concluded that deputy had been wrongfully fired from his road patrol position because of union organizing activities).

Finally, BAC submits that even if the Court finds that Leggat's appointment was not enforceable, there is no genuine issue of a material fact that this defect amounted to a harmless error since Mourtada had not shown any demonstrable prejudice or harm To support this argument, BAC cites *Jackson Investment Corp. v. Pittsfield Products, Inc.*, where the Michigan Court of Appeals held that a defect[3] in complying with the notice provisions of the foreclosure statute renders the foreclosure sale voidable, but not void. 162 Mich. App. 750, 755 (1987). In announcing its ruling, the appellate court underscored the importance of seeking to determine whether any harm was caused by the defect.

In response, Mourtada contends that (1) in light of rulings by the state district court, BAC is barred by *res judicata* and collateral estoppel from revisiting the validity of Leggat's

---

[2]BAC points to the very last sentence in Mich. Comp. Laws § 51.73, which reads: "But this section shall not extend to any person who may be deputed by any sheriff to do a particular act only." Based on this language, BAC asserts that this statute applies only to deputy sheriffs but not to special deputies.

[3]In *Jackson*, the defect was that the interval between the date of the first published foreclosure notice and the date of the sheriff's sale was twenty-three days - five days less than the state trial court found was required by statute.

appointment, (2) there is no statutory authority which authorized an undersheriff - as opposed to the sheriff of a deputy sheriff - to appoint Leggat to serve as a special deputy sheriff, and (3) inasmuch as the issue presented here involves a sheriff's authority to act - and not merely a "notice defect" of the sort considered in *Jackson, supra* - she has no duty to demonstrate a harm or an injury.

In addressing the first argument, Mourtada claims that BAC is bound by the state court judge's earlier determination that (1) "a sheriff is the only person [who] can deputize an individual to perform a particular act related to [Mich. Comp. Laws § 51.73]," (2) "it [did] not appear that . . . Leggat was authorized as a deputy sheriff by the proper authority of the - then Wayne County [sheriff] at the time [when BAC's] property was sold", and (3) "[a]s a result, Deputy Leggat was not authorized to execute the sale of [the Becky] property under [Mich. Comp. Laws § 600.312]."

Mourtada correctly notes that the doctrine of res judicata bars "a subsequent action between the same parties when the essential facts or evidence are identical." *Board of County Road Com'rs for County of Eaton v. Schultz*, 205 Mich. App. 371, 375-376 (1994). However, the Court finds that this doctrine does not apply to the facts presented here. Res judicata requires a showing that (1) the first action was decided on the merits, (2) the matter contested in the second case was or could have been resolved in the first action, and (3) both litigations involve the same parties or their privies. *Id.* It also extends to "every claim arising out of the same transaction which the parties, exercising reasonable diligence, could have raised but did not." *Sprague v. Buhagiar*, 213 Mich. App. 310, 313 (1995); *Cromwell v. County of Sac*, 94 U.S. 351, 365 (1876).

In this case, however, it is clear that - notwithstanding the initial grant of a summary disposition - the state court did set aside its ruling upon reconsideration. Inasmuch as that issue is

still pending and has not resulted in a final ruling on its merits, the Court must reject Mourtada's attempt to use the doctrine of res judicata to restrict the decision making authority of this Court regarding Leggat's power to effect a Sheriff's sale.

For the same reason, the doctrine of collateral estoppel does not preclude the consideration by this Court relating to the issue raised by BAC. The collateral estoppel doctrine bars relitigation of an issue in a later lawsuit once a court has resolved an issue of fact or law that was necessary to its prior judgment. *See generally, Montana v. U. S.*, 440 U.S. 147, 153 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."). This doctrine may be applied offensively, meaning that it can be asserted by a plaintiff who seeks to estop a defendant from relitigating the issues which the defendant has previously litigated and lost. *See generally, Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979). However, before collateral estoppel may be applied, a court must find that (1) the precise issue raised in the present case was raised and actually litigated in the prior proceeding; (2) a determination of the issue was necessary to the outcome of the prior proceeding; (3) the prior proceeding resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior proceeding. *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n (DPOA)*, 821 F.2d 328, 330 (6th Cir. 1987). As noted earlier, the prior action in the state district court has not been decided on the merits. Rather, it is still open, pending a final ruling on Mourtada's claim by this Court. Therefore, Mourtada's offensive collateral estoppel claim must fail.

Turning then to the merits of Mourtada's contention that the undersheriff was without

authority to appoint Leggat to serve as a special deputy sheriff, the Court finds her argument to be unavailing. As a preliminary matter, the Court notes that in Michigan, the undersheriff is required to take the same oath of office as the sheriff and has the same duty to obey and enforce the laws of the state. *People v. Bommarito*, 33 Mich. App. 385, 388-389 (1971). In case of a vacancy in the office of the sheriff (for such reasons as death, illness, etc.), the undersheriff is permitted by law to execute the office of the sheriff until a successor is named. Mich. Comp. Laws § 51.72.

When viewed in light of the exception in § 51.73, it is apparent that Mourtada's argument is flawed. While this statute requires the appointment of an undersheriff or a deputy sheriff to be in writing "under the hand of the sheriff," it specifically excludes those persons who are deputized by "any"[4] sheriff to do a particular act, namely, a special deputy. Here, Leggat was appointed by the undersheriff as a special deputy. His appointment was in writing (as required by Mich. Comp. Laws § 51.70)[5] and, consistent with Mich. Comp. Laws § 600.3216, outlined the particular acts which pertained to the holding of sheriff's sales for which Leggat would be responsible. Thus, like the Court in *English v. Flagstar Bank*, *supra* at *2-3, the Court finds that a special deputy must be appointed in writing. However, the appointment need not be made by the sheriff. Therefore, Legatt's appointment was valid under Michigan law. *Tatar v. Trott*, No. 10-12832, 2011 WL 3706510 (E.D. Mich. Aug. 3, 2011) (finding that special deputy sheriff was properly deputized to

---

[4]The Court reads the plain meaning of the word "any" as used in §51.73 to mean "every" or "all."

[5]This statute provides, in relevant part:

> Each sheriff may appoint 1 or more deputy sheriffs at the sheriff's pleasure, and may revoke those appointments at any time. Persons may also be deputed by a sheriff, by an instrument in writing, to do particular acts, who shall be known as special deputies and each sheriff may revoke those appointments at any time. . . .

conduct foreclosure sales for Wayne County); *Drew v. Kemp-Brooks*, No. 10-14437, ___ F. Supp. 2d ___, 2011 WL 2936103, *6 (E.D. Mich. Jul. 21, 2011) (Mich. Comp. Laws § 51.70 "specifically allows a sheriff to appoint special deputies to perform any particular acts that the [s]heriff himself is authorized by law to perform.") (citing *Tower v. Welker*, 93 Mich. 332, 335 (1892) (finding that Michigan law allows sheriffs to appoint deputies and undersheriffs who, once appointed, have all of ministerial powers of sheriff: "In general, all ministerial duties which the principal himself has a right to perform may be discharged by a deputy."); *Kubicki v. Mortgage Electronic Registration Sys*., ___ Mich. App.___, No. 295854, 2011 WL 668118 (Feb. 22, 2011) (confirming that special deputy appointed under § 51.70 can perform foreclosure sales). In light of this ruling, the Court declines the parties' invitation to determine whether Mourtada is required to show that any alleged defect in the sheriff's sale process caused her to suffer prejudice.

III.

Because the Court concludes that a judgment as a matter of law should be entered, BAC's request for a dismissal of the complaint and/or for the entry of a summary judgment must be, and is granted. Mourtada's lawsuit against BAC is therefore dismissed with prejudice.

IT IS SO ORDERED.

Dated: September 15, 2011
Detroit, Michigan

S/Julian Abele Cook, Jr.
JULIAN ABELE COOK, JR.
United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 15, 2011

s/ Kay Doaks
Case Manager